# EXHIBIT 1

**BLOOMBERG PER SECURITY DATA LICENSE AGREEMENT**

BLOOMBERG L..P., 499 Park Avenue
New York, NY 10022
Facsimile: (212) 893-5540

LICENSOR: BLOOMBERG L.P.  ACCOUNT: **92683**  AGREEMENT: **416965**  ORDER: **416965**
LICENSEE: UBS AG

Licensor agrees to provide to Licensee the services described and referred to in paragraph 1 of this Agreement, and Licensee subscribes to such services in accordance with this Agreement:

**1. The Services** (a) The services provided hereunder (the "Services") shall consist of a nonexclusive and nontransferable license to use the data (the "Data") requested by Licensee from time to time in accordance with, and during the term of, this Agreement. (b) Delivery of the Services shall be made to Licensee at the address set forth on the Schedule as defined in paragraph 3(a). Licensor shall determine, in consultation with Licensee, the method of access, delivery or transmission of the Services to Licensee. (c) The terms and conditions of this Agreement applicable to Licensee shall apply equally to entities that are 100% owned and controlled by Licensee that operate as broker-dealers and/or asset managers, excluding any such entities that are custodians. Use of the Services by such entities may require the payment of an additional fee, as set forth on the Schedule(s) of Services attached to this Agreement.

**2. Term.** (a) This Agreement shall be effective from the date it is accepted by Licensor and shall remain in full force and effect thereafter until the date that is two years after the date that the Services are first provided (the "Term"), unless earlier terminated during the Term or any renewal thereof, as follows: (i) Licensee may terminate this Agreement at any time upon not less than 60 days' prior written notice to Licensor and upon payment of the charges set forth in paragraph 3 of this Agreement; and (ii) Licensor may terminate this Agreement at any time immediately upon written notice to Licensee in the event of a breach by Licensee of any of the provisions of this Agreement. (b) The Term shall be automatically renewed for successive two-year periods unless Licensee or Licensor elects not to renew by giving not less than 60 days' prior notice to the other. If this Agreement is so renewed for any additional period beyond the initial Term, the charges payable pursuant to paragraph 3(a) hereof for such renewal period shall be calculated at the prevailing rates then offered by Licensor, and the Schedule shall be considered to be amended accordingly.

**3. Charges.** (a) Licensee agrees to pay Licensor the amount indicated on the Schedule annexed hereto, as the same may be amended from time to time (the "Schedule"), for the amount and type of data requested by Licensee, together with any levies or fees imposed or charged by exchanges or other information services or sources provided to Licensee (as such levies and fees may be changed from time to time), all of which shall be payable upon presentation of an invoice therefor. (b) Licensee shall be responsible for and shall pay for all costs of cabling, communications, electrical and common carrier equipment installation charges incurred in connection with the Services. Licensee shall obtain all necessary authorizations from exchanges and other information vendors and shall pay for each third-party information service Licensee receives through the Services. Licensor will submit the appropriate applications for such services, a price list, and bill accordingly. Licensee agrees to pay any applicable taxes, assessments, fees or penalties in respect of the Services which may be Licensee's legal responsibility to pay. (c) If this Agreement is terminated pursuant to paragraph 2 hereof, Licensee shall be liable for all amounts payable pursuant to paragraphs 3(a) and 3(b) hereof through the date of termination.

**4. Restrictions on Use.** (a) The Services are solely and exclusively for the use of Licensee and may not be used for any illegal purpose or in any manner inconsistent with the provisions of this Agreement. Licensee agrees to use the Services solely for its internal use and benefit and not for resale or other transfer or disposition to, or use by or for the benefit of, any other person or entity, except that Licensee may, as part of and in the ordinary course of its business and to support the primary business of Licensee, use and disseminate to its customers and prospective customers a limited amount of Data directly related to the type and extent of the customer relationship between such customer and Licensee; provided, however, that Licensee may not use or disseminate the Data in any way which could cause the information so used or disseminated, in Licensor's sole good faith judgment, to be a source of or substitute for the Data otherwise required to be supplied by Licensor or available from Licensor. The prohibition contained in the proviso of the previous sentence shall include, but shall not be limited to, the use or dissemination of the Data by Licensee in its services offered or performed relating to or in the nature of portfolio valuation, correspondent broker or accounting services or trustee or custodian services. In no event will Licensee permit the Data to be used in any way not specifically authorized by Licensor or distributed published, copied, broadcasted, reproduced, ported, or otherwise routed to any third party in any way not authorized herein. The Data may be used by Licensee for the purposes of carrying out calculations which utilize the Data and display the result (the "Resultant Data"), provided that the Data contained in the Resultant Data does not, in Licensor's sole judgment, remain identifiable and may not be readily extracted. (b) Licensee may not use, transfer, distribute or dispose of the Data or Resultant Data in any manner that could compete with the business of Licensor or Licensor's affiliates. Notwithstanding the previous sentence, if Licensee's use transfer, distribution or disposition of Data or Resultant Data, as the case may be, violates the prohibitions on competition with the business of Licensor or Licensor's affiliates and such violation arises solely because Licensor (or its affiliates) has entered a business (i) in which Licensor (or its affiliates) was not engaged on the initial date of this Agreement and (ii) in which Licensee was engaged on the initial date of this Agreement, for the remaining term of this Agreement (not including renewals) such use of the Data or Resultant Data in such business by Licensee, subject to the other restrictions on use set forth in this paragraph and in this Agreement, shall not be deemed to be a competing use for the purpose of this paragraph. Licensee acknowledges that the Data were developed, compiled, prepared, revised, selected and arranged by Licensor and others (including certain information sources) through the application of methods and standards of judgment developed and applied through the expenditure of substantial time, effort and money and constitute valuable intellectual property and trade secrets of Licensor and such others. Licensee agrees to protect the proprietary rights of Licensor and all others having rights in the Data during and after the Term of this Agreement with the same degree of care used to protect its own proprietary rights. Licensee shall honor and comply with all reasonable written requests made by Licensor or its suppliers to protect their and others' contractual, statutory and common law rights in the Data. Licensee agrees to notify Licensor in writing promptly upon becoming aware of any unauthorized access to, or use of, the Data by any party or of any claim that the Data infringe upon any copyright, trademark, or other contractual, statutory or common law rights. (c) Licensee shall not access the Services through any medium or equipment which Licensor has not authorized in writing. The Services are expressly provided by Licensor for operation on Licensee's own equipment and are furnished without warranty as to compatibility, fitness or performance with such equipment, and Licensee shall bear all cost and responsibility for such equipment. Unauthorized access or use is unlawful and Licensor and its suppliers shall have all rights provided by law to prevent such access or use and to collect damages in such event. (d) It is expressly agreed between the parties that the rights granted to Licensee under this Agreement do not include the right to store all or any part of the Data in databases for access by any third party or to distribute any database services containing all or part of such Data. Notwithstanding the prior sentence, Licensee may, for its internal use only, store the Data for the duration of the Term of this Agreement. Licensee may not use the Data in any way to improve the quality of data sold or contributed by Licensee to any third party. (e) Licensee shall not use any of Licensor's trademarks, trade names, or service marks in any manner which creates the impression that such names and marks belong to or are identified with Licensee, and Licensee acknowledges that it has no ownership rights in and to any of these names and marks. (f) Licensee will take all steps necessary to ensure that Licensee's employees comply with all provisions of the Agreement and will obtain from its employees (Additional terms on next page with required acknowledgment)



Agreed to by:  Joanne Rohde, Managing Director
UBS AG  Information Technology
Company Name

Signature (Duly authorized officer, partner or proprietor)
R. ZURBER  DIRECTOR
Name and Title (Please type or print)
Date: 24/9/98

Agreed to by:
BLOOMBERG L.P.
By:  Bloomberg Inc.,
General Partner

By:
Date:  24/09/98

© 1998 Bloomberg L.P. BLOOMBERG, BLOOMBERG NEWS, BLOOMBERG FINANCIAL MARKETS, BLOOMBERG TELEVISION and THE BLOOMBERG TRAVELER are trademarks and service marks of Bloomberg L.P., a Delaware limited partnership.  DT: 176  Pg: 1 of 2  DLpersect/99

appropriate agreements regarding confidentiality and non-disclosure to prevent unauthorized disclosure and misuse during and after the Term of this Agreement.

**5. Warranties and Limitations of Liabilities.** (a) LICENSOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO RESULTS TO BE ATTAINED BY LICENSEE OR OTHERS FROM THE USE OF THE SERVICES, AND THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. Licensor, its suppliers, and its third party agents shall have no responsibility or liability, contingent or otherwise, for any injury or damages, whether caused by the negligence of Licensor, its employees, subcontractors, agents, equipment vendors or otherwise, arising in connection with the Services rendered under this Agreement, and shall not be liable for any lost profits, losses, punitive, incidental or consequential damages or any claim against Licensee by any other party. The Data are derived from sources deemed reliable, but Licensor and its suppliers do not guarantee the correctness or completeness of the Data or other information furnished in connection with the Services. Licensor shall not be responsible for or have any liability for any injuries or damages caused by errors, inaccuracies, omissions or any other failure in, or delays or interruptions of, the Services, from whatever cause. Licensee is solely responsible for the selection of and use or intended use of the Services, the accuracy and adequacy of the Services and information used by it and the resultant output thereof. Licensee shall indemnify Licensor and hold it harmless and at Licensee's expense defend Licensor against any loss, claim, demand or expense (including reasonable attorneys' fees) arising in connection with the use of the Services by Licensee. To the extent permitted by law, it is agreed that the liability of Licensor hereunder for damages, regardless of the form of the action, shall not exceed the fees paid under the Schedule by Licensee for the Services during the six calendar months preceding the alleged injury or damage, and that this shall be Licensee's exclusive remedy. No party shall be liable to the other for any default resulting from force majeure, which shall be deemed to include any circumstances beyond the reasonable control of the party or parties affected. No action, regardless of form, arising out of or pertaining to the Services may be brought by Licensee more than one (1) year after the cause of action has accrued. Licensor shall not be liable for any claim or demand against Licensee by a third party. (b) Notwithstanding any limitations contained in paragraph 5(a) to the contrary, Licensor agrees to indemnify Licensee and hold it harmless and at Licensor's expense defend Licensee against any claim that the Services provided by Licensor hereunder infringe any copyright, trademark or other contractual, statutory or common law rights; provided that (i) Licensee promptly notifies Licensor in writing of the claim, (ii) Licensor shall have sole control of the settlement and defense of any action to which this indemnity relates, (iii) Licensee cooperates in every reasonable way to facilitate such defense, and (iv) if Licensee becomes aware of any suspected infringement by a third party of any proprietary rights of Licensor, Licensee shall promptly notify Licensor of such activities. (c) Licensor is not responsible for the reliability or continued availability of the telephone lines and communications equipment used by Licensee in accessing the Services. (d) Licensee understands that contributors to the Data may choose at any time to inhibit or prohibit their information from being accessed under this Agreement.

**6. Remedies.** In the event of a breach or threatened breach of any of the provisions of this Agreement by Licensee or any of its employees, representatives or affiliates, Licensor shall be entitled to injunctive relief to enforce the provisions hereof, but nothing herein shall preclude Licensor from pursuing any action or other remedy for any breach or threatened breach of this Agreement, all of which shall be cumulative. In the event Licensor prevails in any such action, Licensor shall be entitled to recover from Licensee all reasonable costs, expenses and attorneys' fees incurred in connection therewith. As reasonable protection of the proprietary rights of Licensor and others in the Data, to avoid breach of Licensor's obligations to providers of such information, and to avoid unnecessary uncertainty, burden, and expense for all parties, Licensee acknowledges and agrees that the dissemination or distribution by Licensee of information identical or similar to the Data and from which dissemination or distribution Licensee derives or may derive commercial revenue shall be deemed a breach of the terms of paragraphs 4(a) through 4(f) hereof and shall give rise to an immediate right of Licensor to terminate this Agreement or any portion of the Services provided hereunder.

**7. Parties.** Licensee recognizes that Licensor, its partners, suppliers and their respective affiliates, each have rights with respect to the Services provided by Licensor to Licensee. Licensee acknowledges and agrees that the provisions of paragraphs 5 and 6 of this Agreement shall be for the benefit of Licensor, its partners, suppliers, and their respective affiliates, successors and assigns and that the term "Licensor" as used in such provisions includes Licensor, its partners, suppliers and their respective affiliates.

**8. Access and Audit.** (a) Licensor reserves the right at any time to monitor, either physically or electronically, Licensee's use of the Data and the Resultant Data. Licensee shall allow Licensor access to any of its premises, computers (including, but not limited to, hardware, software and network services) and personnel at all reasonable times for the purposes of such monitoring. Upon request of Licensor, Licensee shall make a management employee available to assist Licensor in such monitoring. (b) Upon the request of Licensor, Licensee shall once a year and at the end of the Term provide to Licensor a certificate signed by Licensee's external or internal auditors or such other authorized person acceptable to Licensor confirming that Licensee is in compliance with the terms of this Agreement. (c) Licensee agrees that if as a result of monitoring by Licensor under paragraph 8(a) or as a result of an audit under paragraph 8(b), Licensee is shown to be using the Data or the Resultant Data in a manner not specifically authorized by this Agreement, Licensor shall have the right to terminate this Agreement and to pursue any and all remedies in respect of such breach.

**9. Archiving of Data.** Upon termination of this Agreement for any reason whatsoever, Licensee shall use its best efforts to promptly delete or purge any and all Data, including any copies of the Data, from any System(s) Licensee used with the Data, and Licensee shall immediately cease using any and all Data. Licensee shall provide Licensor with evidence satisfactory to Licensor of all such deletions, purges and cessation of use. At anytime thereafter, if Licensee finds any Data on any of its Systems that was not deleted or purged, Licensee shall at that time promptly delete or purge such data. Notwithstanding anything to the contrary set forth in this paragraph, upon termination of this Agreement: (i) Licensee shall not be required to delete, purge or cease permitted use of Resultant Data and (ii) Licensee may store or archive the Data only as necessary to comply with internal audit and regulatory requirements, provided Licensee does not otherwise use the Data. "System" shall include without limitation any software, hardware or other electronic equipment or services used by Licensee to receive, store, analyze, manipulate or process the Data or Resultant Data.

**10. Exchange and/or Third Party Data.** (a) All stock and commodity or other applicable exchange data included in the Services shall be displayed by Licensee in accordance with the rules of the relevant exchange(s) and third party information provider(s). (b) Licensee shall pay all fees charged by the relevant exchanges or third parties for access to exchange and/or third party data. Licensee acknowledges and accepts that such fees may be charged on the basis of each computer, user or other factor (as set by such exchanges or third parties) that accesses, or enables access to, such data or information and that the basis of charging and amount of such fees may change without notice.

**11. Miscellaneous.** (a) Licensee accepts that Licensor reserves the right to adjust any Licensor mechanism to disable Licensee's electronic requests or to cease providing the Data to Licensee in order to protect the integrity of Licensor's network where its operation might be affected by the provision of Services to Licensee under this Agreement. (b) Licensor shall have the right at any time or from time to time to change the technical specifications of any aspect of the Services and, in such instance, Licensee shall take all reasonable steps to maintain compatibility of the Services.

**12. Assignment.** Licensee shall not assign this Agreement or the rights hereunder without the consent of Licensor.

**13. Complete Agreement; Modifications or Waivers.** This Agreement, together with the Schedule, which is incorporated herein by reference, is the complete and exclusive statement of the agreements between the parties with respect to the subject matter hereof and supersedes any oral or written communications or representations or agreements relating thereto. No changes, modifications or waivers regarding this Agreement shall be binding unless in writing and signed by the parties hereto. This Agreement, including any modifications, waivers or notifications relating thereto, may be executed and delivered by facsimile or electronic mail. Any such facsimile or electronic mail transmission shall constitute the final agreement of the parties and conclusive proof of such agreement.

**14. Validity.** Licensor and Licensee intend this Agreement to be a valid legal instrument, and no provision of this Agreement which shall be deemed unenforceable shall in any way invalidate any other provisions of this Agreement, all of which remain in full force and effect. The headings in this Agreement are intended for convenience of reference and shall not affect its interpretation.

**15. Governing Law.** This Agreement is made and entered into in the State of New York and shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflicts-of-law provisions thereof. The parties hereto, their successors and assigns, consent to the jurisdiction of the courts of the State of New York with respect to any legal proceedings that may result from a dispute as to the interpretation or breach of any of the terms and conditions of this Agreement.

Dt: 176     Pg: 2 of 2     DLpersec1/98

Customer Signature: _____

Joanne Rohde, Managing Director
Information Technology

Acct: **92603**     Agmt: **416965**     Ord: **416965**

BLOOMBERG DATA LICENSE (PER SECURITY)<br>PRICING SCHEDULE

BLOOMBERG L
499 Park Aven
New York, NY 100
Telephone: (212) 318-25
Facsimile: (212) 893-55

**LICENSOR:**  **BLOOMBERG L.P.**

**LICENSEE:**  UBS AG                                            **ACCOUNT NO:**  **92683**

**DEPARTMENT:** _____     ORDER DATE:  08/06/1998     **ORDER NO:**  **416965**

**DELIVERY ADDRESS:**                                   BILLING ADDRESS: (Payment only accepted from Lessee listed below)

141 WEST JACKSON BOULEVARD                    677 WASHINGTON BLVD

| CHICAGO | IL | 60604 | STAMFORD | | CT | 06901 |
| (City) | (State) | (Zip) | (City) | | (State) | (Zip) |

United States                                           United States

**CONTACTS:**  MAUREEN MCCORMICK          312 554 5192      LISA KOCHAN                312 554 5000
              (User Name & Telephone #)                   (Billing Name & Telephone #)

Licensor and Licensee are parties to a **BLOOMBERG (PER SECURITY) DATA LICENSE AGREEMENT**, Number **416965** (the "Agreement"), which sets fort
the terms and conditions under which Licensor provides to Licensee the Services described therein.

(Additional terms on next page with required acknowledgment)

2 Year License

1. Licensee agrees to pay Licensor the amount indicated on the price list for the amount and type of Data requested by Licensee. The minimum charge per mont
   for Services under the Data License Agreement is $100.
2. Licensee shall be billed monthly in arrears.
3. Licensee shall be charged a flat monthly fee for each unique security requested at any time in a calendar month and is entitled for that fee to one update pe
   security per day in that calendar month.  If Licensee requests more than one update per day per security, each additional update request will be charge
   according to the fee for multiple daily requests.
4. To qualify for the "Monthly Maintenance" fee, where applicable, Licensee shall have requested the same security in the previous month.  Otherwise, License
   shall be charged the "Initial Access Month" fee.

**Schedule covers Warburg Dillon Read and Private Banking Divisions.**

Agreed to by:                                           Agreed to by:

UBS AG           *Joanne Rohde*                         **BLOOMBERG L.P.**
                 Joanne Rohde, Managing Di ____         By:  Bloomberg Inc.,
Company Name (Please type or print) Technology               General Partner

*R Zuber*
Signature (Duly authorized officer, partner or proprietor)

R ZUBER                                                 By: _____
Name (Please type or print)

DIRECTOR                                                       09/28/1998
Title (Please type or print)

Date:  24/9/98                                          Date: _____

The fees do not include monthly fees for real time exchange, third-party information services or applicable taxes.
Charges for installation, relocation, removal or other changes to the Equipment shall be payable upon presentation of an invoice therefore.
If tax-exempt, a copy of the State Tax Exempt certificate must be submitted.

© 1998 Bloomberg L.P.  BLOOMBERG, BLOOMBERG NEWS, BLOOMBERG FINANCIAL MARKETS, BLOOMBERG TELEVISION and THE BLOOMBERG TRAVELER a
trademarks and service marks of Bloomberg L.P., a Delaware limited partnership.

DT: 177          Pg:  1 of 2        Diperscd9/9



0491052.02

### Amendment to Bloomberg Per Security Data License Agreement

Amendment dated __24｜9__, 1998 to Bloomberg Per Security Data License Agreement No. 416965 (the "Agreement") between Bloomberg L.P. ("Licensor") and UBS AG ("Licensee").

1.      The following language shall be added to the end of paragraph 1(a) of the Agreement:

"If, subsequent to the execution of this Agreement, Licensor distributes additional data to other customers of Licensor with respect to a specific Data Set subscribed to by Licensee and such additional data does not require the payment of an additional fee or permission from a third party for distribution, then Licensor shall include such additional data in the Data Set provided to Licensee hereunder."

2.      The language ", excluding any such entities that are custodians" at the end of the first sentence of paragraph 1(c) of the Agreement and the second sentence of paragraph 1(c) of the Agreement shall be deleted in their entirety and replaced with the following language:

"and/or custodians.  Commencement of use of the Services by asset managers or custodians shall require written notification to Licensor and the payment of an additional fee, as shall be set forth on the Schedule(s) of Services attached to this Agreement."

3.      The following language shall be added to the end of paragraph 2(b) of the Agreement:

"Licensor shall provide Licensee with written notice of an upcoming renewal date at least 90 days before the expiration of the initial Term or any renewal Term; provided, however, that if Licensor gives such notice less than 90 days before the expiration of such initial Term or renewal Term, then Licensee may elect not to renew this Agreement by written notice to Licensor given within 30 days of the receipt of such notice."

4.      The following new paragraph 2(c) shall be inserted after the end of paragraph 2(b) of the Agreement:

(c)  Notwithstanding the provisions of paragraph 2(a) of this Agreement, if Licensee is in breach of any portion of paragraph 4 of this Agreement, as may be determined in Licensor's good faith judgment, Licensee shall cease the activity which causes such breach as soon as Licensee is aware of such breach.  Licensee, upon such notification by Licensor, shall, within forty-eight (48) hours, demonstrate in writing to Licensor's good faith satisfaction that the breaching activity is either cured or is not limiting Licensor from conducting business, in which case Licensee shall have 30 days to remedy the breach.  If Licensee fails to satisfy Licensor, in Licensor's good faith judgment, Licensor may terminate this Agreement and such termination shall be deemed a termination under paragraph 2(a)(ii), except that there shall be no opportunity for further cure."

5.      The following language shall be added to the end of paragraph 3(a) of the Agreement:

"Attached hereto as Exhibit A for Licensee's reference is a copy of the price list in effect on the date hereof.  Licensor shall not increase the prices charged to Licensee for the Services by an amount which, when expressed as a percentage, exceeds the price increase charged to other similarly situated licensees in the previous twelve months.  If Licensee subscribes to the maximum amount of securities for any Data Set set forth on the Schedule, Licensee shall not pay a fee for such Data Set under the Bloomberg (Bulk Data) Data Security Agreement between Licensor and Licensee of even date herewith for any month in which Licensee subscribes to such maximum amount of securities."

_____
Joanne Rohde, Managing Director
Information Technology

2v6
24｜9｜

0491052.02

6.      The following language shall be deleted from the third sentence of paragraph 4(a) of the Agreement:

"or custodian".

7.      The following new language shall be added to paragraph 4(a) of the Agreement after the third sentence thereof:

"Licensee may, as part of and in the ordinary course of its business and to support the custodian business of Licensee, use and disseminate to its customers and prospective customers a limited amount of Data directly related to the type and extent of the customer relationship between such customer and Licensee; provided, however, that Licensee may download only the data elements of the Data set forth on Exhibit B hereto.  Licensee may permit its consultants to access the Data solely for the benefit of Licensee as permitted under the terms of this Agreement; provided that Licensee shall be responsible for any breach by any such consultant of any of the terms and conditions of this Agreement and shall indemnify Licensor for any breach of this Agreement by such consultant."

8.      The following language shall be added to the end of the second sentence of paragraph 8 of the Agreement:

"upon forty-eight (48) hours notice and subject to Licensee's normal security procedures".

9.      The following language shall be added to the end of the fourth sentence of paragraph 9 of the Agreement:

"and (iii) Licensee shall not be required to delete, purge or cease permitted use of Data for the period of twenty-four months commencing on the date of the termination of this Agreement at no fee; provided that Licensee does not update or maintain the Data using information obtained from third parties or commingle the Data in any way, including without limitation in any display of the Data, with information obtained from third parties. Not withstanding anything to the contrary in this paragraph 9, Licensees shall have no obligation to delete purge or cease permitted use of the Data until the date of termination agreement number 416966".

10.     Except as set forth in this Amendment, the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Amendment by their authorized representatives as of the date first written above.

UBS AG                                              BLOOMBERG L.P.
                                                    By: Bloomberg Inc.,
                                                        its General Partner

By: R. ZUBER, DIRECTOR                              By: _____
Name: _____                      Name: _____
Title: _____                     Title:                09/28/1998

By: _____
    Joann
    Nakeanne Rohde, Managing Director
Title: Information Technology

10/12/98  MON 02:45 FAX                    BLOOMBERG LP                              ☑006

## Bloomberg *Data License* Per Security Pricing Schedule

### End of Day Pricing

| Product Type<br>Per Security Pricing | BGN&BFV<br>Per Month for<br>Daily Updates | Fee per request for<br>multiple daily<br>request | Maximum<br>Annual Fee |
|---|---|---|---|
| Corporate, Government, and Municipal | $0.60 | $0.03 | NA |
| Equities, & Currencies | $0.20 | $0.01 | NA |
| Options (Full Chain) | $10.00 | $0.01 | NA |
| Mortgage Pools (New Issues Less than 2 years old) | $0.15 | $0.01 | NA |

### Derived Data

| Product Type<br>Per Security Pricing | Derived Data Based on End of Day Price<br>(Exch, BGN, BFV Only)<br>Per Month for Daily Updates | Maximum<br>Annual Fee |
|---|---|---|
| Agency and Whole Loan Backed CMO's & Asset Backed Securities | $2.00 | $245,000 |
| Mortgage Pools (New Issues Less than 2 years old) | $0.50 | $85,000 |
| Exchange Traded, Currency, Corporate, Government, and Municipal Securities | $0.50 | Included in max for security master |

### Security Master

| Product Type<br>Per Security Pricing | Initial Access Month | Maximum<br>Annual Fee |
|---|---|---|
| Exchange Traded, & Currency | $1.50 | $500,000 |
| Corporate, and Government Security Master | $1.50 | $1,200,000 |
| Municipal Security Master | $1.00 | $1,500,000 |
| CMO's, Agencies, & Asset-Backed Securities | $2.00 | $250,000 |
| Mortgage Pools | $0.15 | $50,000 |

### History Files

| Product Type<br>Per Security Pricing for complete Time Series | Initial Access<br>Month | Monthly<br>Maintenance | Maximum<br>Annual Fee |
|---|---|---|---|
| Exchange Traded, & Currency; End of day Price History | $3.00 | .50/mth per sec | $600,000 |
| Exchange Traded, & Currency; Time and Sales and Quote Data | $5.00 | .50/mth per sec | $1,000,000 |
| Economic & Market Indices | $5.00 | .50/mth per sec | $250,000 |
| Corporate, and Government; End of day Price History | $3.00 | .50/mth per sec | $29,400 |

Customer Signature: _R. Zuber_          Acct: **92683**   Agmt: **416965**   Ord: **416965**

2/19/98

Customer Signature: _Rohdy_
Joanne Rohde, Managing Director
Information Technology

10/12/98   MON 02:46 FAX                    BLOOMBERG LP                                ☑007

Data License Per Security Agreement Number 416965
Exhibit B

| Equity Elements | | Corporate and Goverment Elements | | Municipal Elements | |
|---|---|---|---|---|---|
| Short Description | Mnemonic | Short Description | Mnemonic | Short Description | Mnemonic |
| 12 Month DPS - Gross | EQY_DVD_SH_12M | Austrian Number | ID_AUSTRIAN | Ticker | TICKER |
| 12 Month DPS - Net | EQY_DVD_SH_12M_NET | Belgium Number | ID_BELGIUM | Coupon | CPN |
| Ask Price | PX_ASK | Bloomberg Composite Rating | RTG_BB_COMP | Maturity | MATURITY |
| Belgium Number | ID_BELGIUM | CEDEL Number | ID_CEDEL | Name | NAME |
| Bid Price | PX_BID | Common Number | ID_COMMON | ID Cusip | ID_CUSIP |
| Currency | CRNCY | Coupon | CPN | State Code | STATE_CODE |
| Dividend Currency | EQY_DVD_CRNCY | CUSIP Number | ID_CUSIP | Muni Region | MUNI_REGION |
| Dividend Ex Date | EQY_DVD_EX_DT | Danish Number | ID_DANISH | Muni Issue Type | MUNI_ISSUE_TYP |
| Dutch Number | ID_DUTCH | Dutch Number | ID_DUTCH | Mty/Refund Type | MTY_TYP |
| Equity Company ID | ID_BB_COMPANY | Equity Company ID | ID_BB_COMPANY | Coupon Type | CPN_TYP |
| Equity Company ID | ID_BB_SECURITY | Equity Company ID | ID_BB_SECURITY | Coupon Frequency | CPN_FREQ |
| Exchange Code | EXCH_CODE | Euroclear Number | ID_EUROCLEAR | Muni Tax Provision | MUNI_TAX_PROV |
| French Number | ID_FRENCH | French Number | ID_FRENCH | Muni Form | MUNI_FORM |
| ID Cusip | ID_CUSIP | ISIN Number | ID_ISIN | Calculation Type | CALC_TYP |
| ID Number | ID_ISIN | ISMA Number | ID_ISMA | Day Count | DAY_CNT |
| Japanese Company Number | ID_JAPAN_COMPANY | Italian Number | ID_ITALY | Minimum Piece | MIN_PIECE |
| Last DPS - Gross | EQY_LAST_DPS_GROSS | Japan Number | ID_JAPAN | Minimum Increment | MIN_INCREMENT |
| Last DPS Net | EQY_DVD_SH_LAST | Japanese Company Number | ID_JAPAN_COMPANY | Par Amount | PAR_AMT |
| Last Trade | PX_LAST | Luxembourg Number | ID_LUXEMBOURG | Issuer Industry | ISSUER_INDUSTRY |
| Mid Price | PX_MID | Maturity | MATURITY | Muni Federal Taxable | MUNI_FED_TAX |
| Name | NAME | Next Call Date | NXT_CALL_DT | First Settle Date | FIRST_SETTLE_DT |
| Pricing Source | PRICING_SOURCE | Next Call Price | NXT_CALL_PX | First Coupon Date | FIRST_CPN_DT |
| Primary Exchange | EQY_PRIM_EXCH | Next Coupon Date | NXT_CPN_DT | Interest Accrual Date | INTEREST_ACC_DT |
| Security Type | SECURITY_TYP | Next Par Call Date | NXT_PAR_CALL_DT | Next Call Date | NXT_CALL_DT |
| Sedol1 Number | ID_SEDOL1 | Next Par Put Date | NXT_PAR_PUT_DT | Next Call Price | NXT_CALL_PX |
| Split Date | EQY_SPLIT_DT | Next Put Date | NXT_PUT_DT | Next Par Call Date | NXT_PAR_CALL_DT |
| Split Ratio | EQY_SPLIT_RATIO | Next Put Price | NXT_PUT_PX | Next Put Date | NXT_PUT_DT |
| Ticker | TICKER | Norway Number | ID_NORWAY | Next Put Price | NXT_PUT_PX |
| Time/Date Of Last Update | LAST_UPDATE | Pricing Currency | CRNCY | Next Par Put Date | NXT_PAR_PUT_DT |
| Valoren Number | ID_VALOREN | Redemption Value | REDEMP_VAL | Next Coupon Date | NXT_CPN_DT |
| Wertpapier Number | ID_WERTPAPIER | RGA Number | ID_RGA | Next Sink Date | NXT_SINK_DT |
| | | SEDOL 1 Number | ID_SEDOL1 | Next Sink Price | NXT_SINK_PX |
| | | SEDOL 2 Number | ID_SEDOL2 | Bloomberg Composite Rating | RTG_BB_COMP |
| | | Series | SERIES | Workout Price | WORKOUT_PX |
| | | Spanish Number | ID_SPAIN | Mid Price | PX_MID |
| | | Swedish Number | ID_SWEDISH | | |
| | | Ticker | TICKER | | |
| | | Valoren Number | ID_VALOREN | | |
| | | Wertpapier Number | ID_WERTPAPIER | | |

Joanne Rohde, Managing Director
Information Technology

2:16
24/9/98

9/24/98