**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLOOMBERG FINANCE L.P.,

        *Plaintiff,*

      -v-

UBS AG,

        *Defendant.*

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/3/2019
```

Case No. 1:18-cv-06334-VEC

### REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN SWORN TESTIMONY AND DOCUMENTS IN THE POSSESSION, CUSTODY OR CONTROL OF STATPRO GROUP PLC

**TO THE HIGH COURT OF ENGLAND AND WALES:** The United States District Court for the Southern District of New York presents its compliments to the High Court of England and Wales and requests international judicial assistance to obtain evidence to be used in the above-captioned civil proceeding before this Court. This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, Art. 1 *et seq.*, 23 U.S.T. 2555, *reprinted in* 28 U.S.C. § 1781 (hereinafter, the "Hague Convention") and by reference to the United Kingdom, Evidence (Proceedings in Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules 1998.

This Court has determined that it would further the interests of justice if by the proper and usual process of your Court, StatPro Group Plc ("StatPro") were ordered to make available to the Plaintiff for inspection the documents described in Schedule A attached hereto, and to provide sworn testimony on the topics listed in Schedule B attached hereto. The requesting Court is satisfied that the evidence sought to be obtained through this Letter of Request is

relevant and necessary and cannot reasonably be obtained by other methods. This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if the litigation were conducted in an English Court. Because this Court lacks authority to compel participation of StatPro and such participation being necessary in order that justice be served in the above-captioned proceedings, this Court respectfully requests assistance from the High Court of England and Wales.

**SECTION I.**

1. **SENDER**

   The Honorable Valerie E. Caproni
   United States District Judge
   United States District Court for the Southern District of New York
   Thurgood Marshall U.S. Courthouse
   40 Foley Square
   New York, New York 10007
   United States of America

2. **CENTRAL AUTHORITY OF THE REQUESTED STATE**

   The Senior Master of the Queen's Bench Division
   The High Court of England and Wales
   For the attention of the Foreign Process Section
   Room E16
   Royal Courts of Justice
   Strand
   London WC2A 2LL
   United Kingdom

3. **PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED**

   Kate Vernon
   Quinn Emanuel Urquhart & Sullivan, LLP
   90 High Holborn
   London WC1V 6LJ
   United Kingdom

4. **SPECIFICATION OF DATE BY WHICH THE REQUESTING AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER OF REQUEST**

A response is requested as soon as possible, in order to ensure the evidence may be obtained before the completion of fact discovery, currently set for May 17, 2019.

**SECTION II.**

**IN CONFORMITY WITH ARTICLE 3 OF THE HAGUE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:**

5. a.      **REQUESTING JUDICIAL AUTHORITY (ARTICLE 3(A))**

Honorable Valerie E. Caproni
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007
United States of America

b.      **TO THE COMPETENT AUTHORITY OF THE UNITED KINGDOM (ARTICLE 3(A))**

The Senior Master of the Queen's Bench Division
The High Court of England and Wales
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand
London WC2A 2LL
United Kingdom

c.      **NAME OF THE CASE AND ANY IDENTIFYING NUMBER**

Bloomberg Finance L.P. v. UBS AG, Case No. 1:18-cv-06334-VEC, United States District Court for the Southern District of New York.

**6. NAMES AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES OF THE CASE (ARTICLE 3(B))**

a. <u>Plaintiff:</u>

Bloomberg Finance L.P.
731 Lexington Avenue
New York, New York 10022

*Represented By*:
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew J. Rossman
51 Madison Avenue, 22nd Floor
New York, New York 10010
United States of America
(212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kate Vernon
90 High Holborn
London WC1V 6LJ
United Kingdom
+44 20 7653 2000

b. <u>Defendant:</u>

UBS AG
Talacker 24
8001 Zurich
Switzerland

*Represented By*:
CAHILL GORDON & REINDEL LLP
Charles A. Gilman
80 Pine Street
New York, New York 10005
United States of America
(212) 701-3000

**7. NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS (ARTICLE 3(C))**

The above-captioned case is a civil adversarial proceeding in the United States District

Court for the Southern District of New York between Plaintiff Bloomberg Finance L.P.

("Bloomberg") and Defendant UBS AG ("UBS"). Bloomberg alleges that UBS breached the terms of two data license agreements that UBS executed with Bloomberg in 1998, which were subsequently amended in 2005. The 2005 amendment to the 1998 agreements provided that, subject to the other terms of the agreements, UBS

> may use the Data elements set forth on Exhibit C within certain [UBS]-developed applications (the "[UBS] Applications"), whereas such [UBS] Applications are designed to facilitate transactions with [UBS]; provided however that [UBS] may not use or disseminate such Data in any way which could, as determined in [Bloomberg's] sole good faith discretion, either (i) cause the information so used or distributed to be used as a source of or substitute for the Data otherwise required to be supplied by [Bloomberg] or available from [Bloomberg] or (ii) compete with the business of [Bloomberg] or [Bloomberg's] affiliates.

Compl. Ex. 3, at § 8.

In April 2017, Bloomberg learned that UBS had sold UBS Delta to StatPro, a U.K. provider of cloud-based portfolio management and analytics services. Compl. ¶ 40. Because StatPro did not have a license to access, view, or use Bloomberg data, Bloomberg contacted UBS to investigate the implications of the sale. *Id.* ¶¶ 42-43. In the course of the parties' communications, UBS indicated that it had been providing some Bloomberg data to UBS Delta customers, through "[o]ccasional indirect communication" or "a one off chart to illustrate a point." *Id.* ¶ 49. UBS also indicated that

> Clients are able to extract their portfolio information on the [UBS Delta] screen, via pdf or excel (csv or xml). They cannot download the datasets associated with the calculations per se (i.e. the inputs), but, can obviously see the blended data as it relates to their portfolios (including reference data & UBS calculations) and therefore will see the end result which is a blend of data from various Market data suppliers and UBS data sets (including Bloomberg – for example pricing data for a bond comes from Reuters and reference data such as the Coupon comes from Bloomberg).

*Id.* ¶ 53. UBS maintains that these uses are permitted by and within the scope of its licenses with Bloomberg. However, Bloomberg has taken the position that this conduct exceeds the scope of UBS's license.

In February 2018, Bloomberg sent a notice terminating the provision of the parties' agreement that gave UBS a right to use Bloomberg's data "within certain [UBS]-developed applications," and demanded that UBS "cease and desist sharing, making available, and/or allowing access to current and historical Bloomberg data by any third party . . . ." *Id.* ¶¶ 56-57. Bloomberg has alleged that StatPro's continued access to Bloomberg Data from UBS has caused and continues to cause Bloomberg past and ongoing harm. *Id.* ¶ 109. In connection with its claims, Bloomberg seeks StatPro's sworn corporate testimony and certain documents and communications within StatPro's possession, custody, or control that are necessary to establish (i) whether, and if so the extent to which, UBS has disclosed Bloomberg's proprietary data to StatPro, (ii) whether, and if so the extent to which, StatPro and its employees have access to Bloomberg's proprietary data, and (iii) whether, and if so the extent to which, StatPro has used Bloomberg's data to improve its product. This evidence is probative of a key, disputed issue in this matter regarding one of Bloomberg's claims against UBS.

## 8. <u>EVIDENCE TO BE OBTAINED AND PURPOSE (ARTICLE 3(D))</u>

This Court requests that, pursuant to the Hague Convention, the appropriate judicial authority, the High Court of England and Wales, compel the production of documents described in Schedule A attached hereto and compel the appearance of StatPro to testify under oath on the topics described in Schedule B attached hereto.

The documents described in Schedule A are, upon information and belief, within the possession, custody, or control of StatPro only in the United Kingdom, and therefore this Court cannot directly compel it to provide the required evidence. Similarly, StatPro is headquartered in the United Kingdom, and is, upon information and belief, neither domiciled nor doing business

in the United States.  Thus, this Court cannot directly compel it to provide testimony on the topics listed in Schedule B.

Documentary evidence and sworn testimony obtained from StatPro pursuant to a Letter of Request is admissible evidence under United States law, specifically, Federal Rules of Civil Procedure 28(b) and 45, and may be offered at trial in the above-captioned case. While this Court expresses no view as to the merits of the Complaint, it believes the evidence sought here will be relevant to and either probative or disapprobative of material facts relevant to said Complaint.

## 9. IDENTITY AND ADDRESS OF THE PERSON TO BE EXAMINED (ARTICLE 3(E))

StatPro Group Plc
Mansel Road
Wimbledon
London SW19 4AA
United Kingdom
+44 20 8410 9876

## 10. STATEMENT OF THE SUBJECT MATTER ABOUT WHICH THE PERSON WILL BE EXAMINED (ARTICLE 3(F))

This Court requests that questioning be permitted of StatPro regarding the topics identified in Schedule B.  The specified topics are believed to be within the knowledge of StatPro and are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties in this litigation.

## 11. DOCUMENTS AND OTHER EVIDENCE TO BE INSPECTED (ARTICLE 3(G))

It would further the interests of justice if you would summon StatPro to produce or make available for inspection the documents specified in Schedule A, attached hereto. The requests specify documents that the Plaintiff believes to exist in StatPro's custody, possession, or control, and which are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties in this litigation.

7

12. **REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION (ARTICLE 3(H))**

This Court requests that StatPro's testimony be taken under oath. Pursuant to United States Federal Rule of Evidence 603, this Court requests that the witness be required to declare that it will testify truthfully, by oath or affirmation administered in a form calculated to awaken its conscience and impress its mind with the duty to do so. Specifically, the Court requests that the duly appointed official require the witness to provide its deposition testimony under the following oath: "I, [name of witness], swear [or affirm] that the testimony I am about to give is the truth, the whole truth, and nothing but the truth."

13. **SPECIAL PROCEDURES OR METHOD TO BE FOLLOWED (ARTICLE 3(I))**

This Court requests that the documents described in Schedule A be produced as they are kept in the ordinary course of business and in their original file folders with any identifying labels, file markings, or similar identifying features, and that electronically stored information ("ESI") be collected in a manner that preserves all metadata, and that duplicates be removed from all ESI productions in a manner that does not break up document families (such as e-mails and attachments), but that any duplicate ESI that is not produced be preserved. With the exception of any spreadsheets or database documents (*e.g.*, documents created on software such as Microsoft Excel or Microsoft Access), which should be produced in their native format, this Court further requests that all electronic documents, ESI and electronic mail be produced in single page tagged image file format ("TIFF") with separate optical character recognition ("OCR") files for each document or in hard copy form, and that to the extent practicable, a Summation load file of all such ESI also be provided containing extractable metadata, including at least the following: DOCID, PARENTID, CHILDID, NUMPAGES, DOCTITLE, SUBJECT,

AUTHORS, FROM, TO, CC, BCC, ATTACHMENTS, DATESENT, TIMESENT, DATECREATED, FOLDER, and EXTRACTED TEXT.

The Court further requests that the sworn testimony of StatPro be taken by oral examination under the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the internal laws of the United Kingdom. This Court requests: (1) that the examination be taken orally; (2) that the examination be taken before a commercial stenographer and videographer selected by Plaintiff; (3) that the stenographer be permitted to record the examination by audiovisual means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that the examination be conducted in English; (6) that counsel for Plaintiff and Defendant be notified as soon as possible of the date, time, and place of the examination, along with any other pertinent information, including what authority has been appointed to preside over the deposition; (7) that counsel for Plaintiff and Defendant be permitted to question the witness regarding the subject matter described in Schedule B (8) that seven (7) hours be allotted for the examination; and (9) that the witness be examined as soon as possible.

In the event the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such a manner as provided by the applicable law of England and Wales.

**14. <u>REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUEST AND IDENTITY AND ADDRESS OF ANY PERSON TO BE NOTIFIED (ARTICLE 7)</u>**

Please send notice of the time and place for the execution of this Request to:

> Clerk of the United States District Court
> for the Southern District of New York
> Thurgood Marshall U.S. Courthouse
> 40 Foley Square

New York, New York 10007
United States of America

Andrew J. Rossman
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
United States of America
(212) 849-7000

Kate Vernon
QUINN EMANUEL URQUHART & SULLIVAN LLP
90 High Holborn
London WC1V 6LJ
United Kingdom
+44 (20) 7653-2000

Charles A. Gilman
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
United States of America
(212) 701-3000

**15. REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER OF REQUEST (ARTICLE 8)**

None.

**16. SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN (ARTICLE 11)**

Under the laws of the United States, a party has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly.

Parties also enjoy limited privileges on other grounds not relevant here, such as communications between spouses, physician and patient, psychotherapist and patient, and clergy

and penitent. U.S. law also recognizes a privilege against criminal self-incrimination. Outside the strict area of privilege, certain limited immunities are available that may place restrictions on the giving of evidence, such as the limited protection of documents that constitute the work product of attorneys created during or in anticipation of litigation.

## 17. **REIMBURSEMENT (ARTICLE 14)**

The fees and costs incurred that are reimbursable under the second paragraph of article 14 or under article 26 of the Convention will be borne by Plaintiff. Their payment of any such fees and costs is without prejudice to their making a subsequent request to be reimbursed for these costs by other parties in the matter.

Date of Request: _____January 3_____, 2019

SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY

(Affix Seal Here)

Seal of the Court

Honorable Valerie E. Caproni
United States District Judge
United States District Court
for the Southern District of New York

**SCHEDULE A**

REQUEST FOR DOCUMENTS TO BE PRODUCED FOR INSPECTION
BY STATPRO GROUP PLC

**DEFINITIONS**

1.     "2005 Addendum" means the "Second Addendum to Bloomberg Per Security Data License Agreement and Bloomberg (Bulk Data) Data License Agreement Between Bloomberg L.P. and UBS AG," dated January 24, 2005.

2.     "Alternate Data Provider" means any provider from whom data is, will be, or may be obtained, to replace some or all of the Bloomberg Data used within UBS Delta, including any such provider's current and former officers, directors, employees, partners, corporate parents, subsidiaries or affiliates, or any consultants or agents.

3.     "Bloomberg" means Bloomberg Finance L.P. and its corporate parents, subsidiaries, or affiliates, including but not limited to Bloomberg L.P.

4.     "Bloomberg Data" means data licensed by Bloomberg to UBS under the Global Agreements and used (at any time) within UBS Delta.

5.     "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

6.     "Complaint" means the Complaint filed by Bloomberg against UBS on July 12, 2018 in case number 1:18-cv-06334 before the United States District Court for the Southern District of New York.

7.     "Data Field" means a column, row, or subdivision within a table, chart, database, data entry form, or web form containing information or describing certain characteristics of a particular security or financial instrument, including any "Data element," as defined in Section 8

12

of the 2005 Addendum in reference to the individual line items (denoted by "Short Description" and "Mnemonic") in Exhibit C thereto.

8.      "Employees" refers to all individuals compensated directly or indirectly by StatPro, whether by direct employment agreement or otherwise, including agents, consultants, contractors, or workers.

9.      "Global Agreements" means the Bloomberg Per Security Data License Agreement and Bloomberg (Bulk Data) License Agreement, both dated September 24, 1998, as amended on September 28, 1998, and January 24, 2005.

10.     "Including" and "includes" mean "without limitation," so that each Request shall be construed broadly, rather than narrowly, to bring within the scope of each Request all responses that might otherwise be construed to be outside its scope.

11.     "Relating to," "referring to," "reflecting," and "regarding" are used in their broadest sense, and mean anything that, directly or indirectly, generally or specifically, regards, relates to, refers to, concerns, contains, constitutes, contradicts, evidences, embodies, comprises, reflects, mentions, identifies, states, deals with, comments on, responds to, describes, analyzes, or is in any way, directly or indirectly, relevant to the subject.

12.     "Resultant Data" shall have the meaning ascribed to it in the Global Agreements.

13.     "UBS" refers to UBS AG, and its current and former officers, directors, employees, partners, consultants, corporate parents, subsidiaries or affiliates.

14.     "UBS Delta" means the portfolio analysis and risk management system developed by UBS, as described in the Complaint.

15.     "UBS Delta Migration" refers to the process by which UBS has replaced, is replacing, or will replace Bloomberg Data within UBS Delta with data from any Alternate Data Provider(s), as described in paragraph 116 of the Complaint.

16.     "UBS Delta Transition" refers to the process by which UBS is conveying the features and functionality of the UBS Delta platform to StatPro, as described in paragraph 40 of the Complaint.

17.     "UBS Delta User" means any individual or entity that can access UBS Delta, regardless of whether that individual or entity pays a fee for that service, but not including UBS or its employees who are licensed to view Bloomberg Data.

18.     "Validate" or "Validation" means the process of testing, comparing, or analyzing Bloomberg Data, any information about Bloomberg Data, or any Resultant Data, with data from any Alternate Data Provider, or resultant data generated through the use of data from an Alternate Data Provider, including testing, comparing, or analyzing UBS Delta outputs generated using Bloomberg Data with UBS Delta outputs generated using data from any Alternate Data Provider.  "Validate" or "Validation" also includes any disclosure of Bloomberg Data, Resultant Data, or information about Bloomberg Data or Resultant Data (or any other disclosure that could not have been made in the absence of access to Bloomberg Data or Resultant Data) to an Alternate Data Provider in any way that could assist the Alternate Data Provider in the identification of errors or omissions in such Alternate Data Provider's data or allow such Alternate Data Provider to confirm the absence of errors in such Alternate Data Provider's data.

19.     "Validation Report" means any document or report generated through any process of Validation.

20.     "You," "Your," and "StatPro" refer to StatPro Group Plc, and its current and former officers, directors, employees, partners, corporate parents, subsidiaries, or affiliates.

## PARAMETERS

1.      Unless otherwise indicated in the specific Request, the relevant time period for these Requests ("Relevant Time Period") is from January 1, 2017 to the present.

2.      Any request or response to any request involving a corporation, limited partnership, aktiengesellschaft, private limited company, or any other entity, also refers to and includes any and all current and former officers, directors, employees, partners, parents, subsidiaries, or affiliates of such entity.

3.      Whenever necessary to bring within the scope of a request any document that might otherwise be construed to be outside of its scope, the use of a verb in any tense shall be construed as the use of that verb in all other tenses.

4.      The use of the singular form of any word includes the plural and vice versa.

5.      If You believe that any of the following Requests for Production of Documents ("Requests") calls for assertion of a claim of privilege, produce so much of the document(s) as is not objected to, state the part of each Request as to which You raise an objection, and set forth the basis for Your claim of privilege with respect to such information as You refuse to give; and for each document as to which You claim privilege, state:

(a)     the type of Document;

(b)     the general subject matter of the Document;

(c)     the date of the Document;

(d)     such other information as is sufficient to identify the Document including the author of the Document, the addressee of the Document, and, where not apparent, the relationship of the author and the addressee to each other; and

(e)     the type or nature of the privilege asserted (*i.e.*, attorney-client privilege, work product doctrine, etc.).

6.     If You make any objection to a particular Request, state whether any documents which would otherwise be responsive to the Request have been withheld from production based upon that objection.

7.     If, for reasons other than a claim of privilege, You refuse to produce any document or portion of a document described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

8.     This Request seeks documents in Your possession, custody, and/or control.

9.     With respect to the documents produced, You shall produce them as they are kept in the usual course of business.

10.     Responsive documents in Your possession that are in the form of electronically-stored information ("ESI"), such as electronic records and computerized information, must be produced with all metadata preserved and intact.

11.     All hard copy documents shall be produced as black and white 300 dpi single page TIFF images with accompanying document-level OCR and Concordance and Opticon load files with the following metadata fields: BegBates, EndBates, Page Count, and Custodian.

12.     Emails, MS office documents, and other electronic documents shall be produced as black and white 300 dpi single-page TIFF images except that Excel files or spreadsheets shall be produced in native format with the native file named by the BegBates. Native files for all electronic documents shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

13.     Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

14.     File folders with tabs or labels, or directories of files identifying documents, must be produced intact with such documents.

15.     Documents attached to each other shall not be separated.

16.     A document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions. The term "original" includes the file copy or copies of any document if there is no actual original or ribbon copy.

17.     If Your response to a particular request is a statement that You lack the ability to comply with that request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information or category of information must be identified.

18.     This set of Requests shall be deemed continuing, and documents that are responsive, but are discovered, created, or acquired subsequent to an initial production shall be promptly produced in the same manner as the initial production.  Each of these definitions and instructions shall be fully applicable to each Request, notwithstanding such definition or instruction may, in whole or in part, be reiterated in a particular Request, or that a particular Request may incorporate supplemental instructions or definitions.

## REQUESTS FOR PRODUCTION

Pursuant to the parameters listed above, including the time period specified at Parameter No. 1, it is respectfully requested that StatPro Group Plc be compelled to produce for inspection the following documents that are in its possession, custody, and control:

### REQUEST NO.1

Organizational charts or directories sufficient to show the reporting responsibilities of any of Your Employees (i) who have responsibilities related to UBS Delta, or (ii) who perform work at premises owned or controlled by UBS.

### REQUEST NO.2

Policies, practices, procedures, and understandings (whether official or unofficial) governing Your use of or access to Bloomberg Data, information about Bloomberg Data, or Resultant Data, including any limits or restrictions thereon.

### REQUEST NO.3

Any agreements, understandings, or other confidentiality obligations that You have with any StatPro client regarding use of or access to Bloomberg Data, information about Bloomberg Data, or Resultant Data.

### REQUEST NO.4

All Documents and Communications regarding Your use of or access to Bloomberg Data, information about Bloomberg Data, or Resultant Data, including any such use or access in connection with UBS Delta.

19

**REQUEST NO.5**

Any agreements, understandings, or commercial arrangements reflecting Your commercial interest in UBS Delta or any assets (including technologies) associated with UBS Delta, at any time on and after April 7, 2017.

**REQUEST NO.6**

Documents and Communications with UBS regarding any arrangement whereby Your Employees perform work at premises owned or controlled by UBS.

**REQUEST NO.7**

All agreements, arrangements, and understandings between You and UBS governing any work arrangements with Your Employees in connection with UBS Delta.

**REQUEST NO.8**

All agreements, arrangements, and understandings between You and any of Your Employees who worked for UBS with responsibilities related to UBS Delta at any time in the three-month period prior to the April 7, 2017 announcement of Your acquisition of UBS Delta.

**REQUEST NO.9**

Documents and Communications sufficient to show how You are addressing, or intend to address, data discrepancies generated by differences between Bloomberg Data and the data of (an) Alternate Data Provider(s) in connection with the UBS Delta Migration.

**REQUEST NO.10**

Documents and Communications regarding any Validation that has been or is being performed, including any Validation You may perform in connection with the UBS Delta Migration or the UBS Delta Transition.

**REQUEST NO.11**

Any Validation Reports generated in connection with the UBS Delta Migration.

**REQUEST NO.12**

All Communications with UBS and/or Alternate Data Providers regarding Bloomberg Data, information about Bloomberg Data, or Resultant Data, including, but not limited to, information about (i) the scope of data that Bloomberg provides or that is made available from Bloomberg under the Global Agreements; (ii) the Data Fields that Bloomberg provides or that are made available from Bloomberg under the Global Agreements; and (iii) how Bloomberg Data is provided, arranged, structured, or accessed.

**REQUEST NO.13**

All Documents and Communications regarding the Global Agreements, Bloomberg Data, information about Bloomberg Data, or Resultant Data in connection with the UBS Delta Migration.

**REQUEST NO.14**

All Documents and Communications regarding the Global Agreements, Bloomberg Data, information about Bloomberg Data, or Resultant Data in connection with the UBS Delta Transition.

## SCHEDULE B

It is respectfully requested that StatPro Group Plc be compelled to produce a witness prepared to provide sworn testimony on the topics listed below.

## DEFINITIONS

Unless otherwise noted, the definitions from Schedule A shall apply.

## TOPICS FOR DEPOSITION

It is respectfully requested that StatPro Group Plc be compelled to testify under oath or affirmation, on the following topics for use at trial:

## TOPIC NO. 1

Policies, practices, procedures, and understandings (whether official or unofficial), governing Your use of or access to Bloomberg Data, information about Bloomberg Data, or Resultant Data, including any limits or restrictions thereon.

## TOPIC NO. 2

Your commercial interest in UBS Delta or any assets (including technologies) associated with UBS Delta, at any time on and after April 7, 2017.

## TOPIC NO. 3

Agreements, arrangements, and understandings between You, Your Employees, and/or UBS, regarding work arrangements with your Employees in connection with UBS Delta, prior to and after the April 7, 2017 announcement of Your acquisition of UBS Delta.

## TOPIC NO. 4

Any efforts to address data discrepancies generated by differences between Bloomberg Data and data of an Alternate Data Provider in connection with the UBS Delta Migration, including the identification of individuals who are responsible for executing the UBS Delta

Migration, any description of any Validation process that has been, is being, or may be performed, as it involves the use of Bloomberg Data.

## TOPIC NO. 5

Your communications with UBS and/or Alternate Data Providers regarding Bloomberg Data, information about Bloomberg Data, or Resultant Data, including, but not limited to information about:

    (i)    the scope of data that Bloomberg provides or that is made available from Bloomberg under the Global Agreements;

    (ii)    the Data Fields that Bloomberg provides or that are made available from Bloomberg under the Global Agreements; and

    (iii)    how Bloomberg Data is provided, arranged, or structured.

## TOPIC NO. 6

Your access to and/or use of Bloomberg Data, information about Bloomberg Data, or Resultant Data.